# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHARDE EVANS,

    Plaintiff,

v.

WAL-MART STORES, INC., et al.,

    Defendants.

2:10-CV-1224 JCM (VCF)

# ORDER

Presently before the court is plaintiff Charde Evans' renewed motion for class certification. (Doc. # 49). Defendant Wal-Mart Stores, Inc., has filed a response in opposition (doc. # 53) and plaintiff has filed a reply (doc. # 56).

Also before the court is defendant's motion for summary judgment. (Doc. # 52). Plaintiff has filed a response (doc. # 57) and defendant has filed a reply (doc. # 59).

**I.    Background**

Plaintiff Charde Evans was formerly employed by Wal-Mart as a stocker/cashier from September 25, 2008, to June 5, 2010. (Compl., doc. # 1, ¶ 3). Plaintiff alleges that she and others similarly situated were required to work in excess of eight hours within a twenty-four hour period without receiving overtime pay. (*Id.*, ¶ 6). Plaintiff further alleges that Wal-Mart did not pay the due overtime wages within the time period required by statute, and that she and others similarly situated are therefore entitled to waiting time penalties. (*Id.*, ¶ 18-22). On July 22, 2010, plaintiff filed a complaint stating causes of action for shift jamming (count one) and waiting time penalties (count two). (*Id.*).

**James C. Mahan**
**U.S. District Judge**

On November 17, 2010, this court entered an order approving the parties' stipulation for dismissal of certain claims which overlapped with a separate class action settlement approved in the matter of *In re: Employment Practices Litigation*, MDL No. 1735, 2:06-cv-225-PMP-PAL. (*See* doc. # 33). In particular, this court's order dismissed all claims occurring prior to February 27, 2009. (*Id.*). As a result, the time period for the instant claims is limited to February 27, 2009, through June 5, 2010, which is the day plaintiff's employment with Wal-Mart terminated.

In 2010, Wal-Mart conducted a self-audit and entered into a settlement with the Nevada labor commissioner regarding alleged shift jamming and failure to pay overtime for the period from August 1, 2007, through July 31, 2010. (*See* labor commissioner's order, doc. # 49, ex. 2). As a result of that settlement, Wal-Mart issued checks to 11,246 former and current employees, including plaintiff, to compensate them for the unpaid overtime. (Doc. # 57, p. 3). Of those 11,246, plaintiff alleges that 4,358 are employees who ended their employment before the overtime checks were paid, and therefore constitute the prospective class members to whom waiting time penalties are due. (Doc. # 49, p. 5). The checks included a waiver which read: "By cashing or retaining the enclosed check, you will be accepting it as full payment of any incorrectly calculated overtime that may be owed to you under state law through the date reflected on your check." (*See id.* at 12). Plaintiff concedes she was issued a back-wage check in the amount of $234.90. (*Id.*).

Through a series of stipulations, this case was stayed pending mediation from June 2011 to April 2013. Upon expiration of the stay, and after mediation attempts failed, plaintiff renewed her motion to certify the class and defendant filed its motion for summary judgment.

**II.     Legal standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

1    In determining summary judgment, a court applies a burden-shifting analysis. "When the
2    party moving for summary judgment would bear the burden of proof at trial, it must come forward
3    with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.
4    In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
5    of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
6    F.3d 474, 480 (9th Cir. 2000) (citations omitted).

7    In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
8    moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
9    element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
10   make a showing sufficient to establish an element essential to that party's case on which that party
11   will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party
12   fails to meet its initial burden, summary judgment must be denied and the court need not consider
13   the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

14   If the moving party satisfies its initial burden, the burden then shifts to the opposing party
15   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
16   *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
17   party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
18   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
19   of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
20   Cir. 1987).

21   In other words, the nonmoving party cannot avoid summary judgment by relying solely on
22   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
23   (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
24   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
25   for trial. *See Celotex Corp.*, 477 U.S. at 324.

26   At summary judgment, a court's function is not to weigh the evidence and determine the
27   truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable
2  inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is
3  merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
4  249–50.

5  **III.   Discussion**

6  Although plaintiff's motion to certify the class was filed before defendant's motion for
7  summary judgment, the court first addresses the motion for summary judgment as it moots the
8  motion to certify.

9  *A. Labor commissioner's order*

10  Wal-Mart asserts that the labor commissioner's order fully settled and released Wal-Mart
11  from liability for both overtime and waiting time penalties for the relevant time period.  Thus,
12  according to defendant, the commissioner's order acts as a bar to the instant claims, and plaintiff
13  does not have standing to bring them.  In response, plaintiff asserts that the order says nothing about
14  waiting time penalties or waiving a private right of action, the release accompanying the checks
15  issued by Wal-Mart makes no reference to waiting time penalties, no adversarial proceedings were
16  initiated by the labor commissioner, and his order had no impact on waiting time penalties.

17  The labor commissioner's order consists of a single page and is devoid of fact, reasoning, or
18  explanation.  The order reads, in pertinent part, that "[Wal-Mart] has provided the Labor
19  Commissioner with satisfactory proof of payment of back wages for all amounts determined due for
20  the Audit Period," that it "fully and fairly adjust[s] and settle[s] the issues raised thereby" and that
21  "all actions and obligations previously acknowledged, endorsed or required by the Labor
22  Commissioner. . .are fully performed and fulfilled to the satisfaction of the Labor Commissioner,
23  [and] this matter is concluded and adjusted and settled pursuant to N.R.S. § 607.170 without further
24  fine or penalty." (*See* labor commissioner order, doc. # 52, ex. 1).

25  Defendant argues that this language conclusively resolves the instant claims, pointing, in
26  particular, to the commissioner's conclusion that the matter is resolved "without further fine or
27  penalty."  In response, plaintiff argues that the order resolved only the issue of unpaid overtime, did

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  not affect defendant's "mandatory" obligation to pay waiting time penalties, and that neither plaintiff
2  nor any prospective class member was a party to this non-adversarial resolution and should not be
3  barred from pursuing waiting time penalties because of it.

4  It appears from plaintiff's opposition that she concedes that the labor commissioner's order
5  and/or the receipt of her overtime check resolved her overtime claim (count one). (*See* generally
6  opposition, doc. # 57). However, without more, the court cannot conclude with absolute certainty
7  that the labor commissioner's order definitively resolved any and all claims regarding waiting time
8  penalties. Accordingly, in an abundance of caution, the court will address the waiting time claim
9  on its merits.

10  *B. Waiting time penalties under N.R.S. §§ 608.040 and 608.050*

11  The core of the parties' dispute revolves around a question of law appropriate for summary
12  adjudication. That is, a determination as to whether waiting time penalties are available for
13  delinquent overtime pay under Nevada law.

14  The waiting time claim stems from plaintiff's allegation that Wal-Mart failed to pay her and
15  others similarly situated overtime wages as a result of "shift jamming." Under Nevada law,
16  employees who are paid less than one and a half times minimum wage are entitled to overtime if they
17  work more than eight hours in any workday. *See* N.R.S. § 608.018. A workday is defined as "a
18  period of 24 consecutive hours which begins when the employee begins work." N.R.S. § 608.0126.
19  Thus, shift jamming occurs when an employee does not have 16 consecutive hours off between two
20  eight-hour shifts. Put differently, employees must have 24 hours between the beginning of one shift
21  and the beginning of the next, else they are owed overtime.

22  Because Wal-Mart allegedly engaged in shift jamming (which was resolved through the labor
23  commissioner) and then failed to pay associates their overtime pay within the time period required
24  by statute, plaintiff argues that those associates are now entitled to additional waiting time penalties
25  under N.R.S. §§ 608.040 and 608.050.

26  Nevada law permits employees to recover additional penalties in the amount of their normal
27  wages or compensation daily until such wages or compensation are fully paid, or for 30 days under

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

N.R.S. § 608.040, which reads:

> 1. If an employer fails to pay:
>
>> (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or
>>
>> (b) On the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less.

N.R.S. § 608.040(1).

Thus, this section permits employees to collect up to 30 days of *wages* at their regular rate.

In addition to the penalties provided by § 608.040, employees may also recover penalties and a lien on the employer's property under N.R.S. § 608.050, which provides:

> 1. Whenever an employer of labor shall discharge or lay off employees without first paying them the amount of any wages or salary then due them, in cash and lawful money of the United States, or its equivalent, or shall fail, or refuse on demand, to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of the employees may charge and collect wages *in the sum agreed upon in the contract of employment* for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default.
>
> 2. Every employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as the employee would have been entitled to had the employee rendered services therefor in the manner as last employed.

N.R.S. § 608.050 (emphasis added).

It is notable that both sections refer specifically to "wages," and neither makes any reference to overtime pay. Under Nevada law, "wages" are defined as "[t]he *amount which an employer agrees to pay an employee* for the time the employee has worked, computed in proportion to time.

James C. Mahan
U.S. District Judge

- 6 -

. .." N.R.S. § 608.012(1) (emphasis added). The "amount which an employer agrees to pay an employee" is simply the contractually agreed upon wage. In contrast, overtime is a creature of statute, and is separate and distinct from contractually created regular wages.

In particular, N.R.S. § 608.050 specifically limits the applicability of the waiting time fine to "the sum agreed upon in the contract of employment..." *See* N.R.S. § 608.050(1). These penalties are therefore limited to the contractually agreed upon rate of pay, which necessarily does not include the statutorily-created overtime rates. Thus, the plain language of the statutes do not provide for waiting time penalties for overtime pay.[1]

Indeed, this court has previously held that waiting time penalties do not apply to overtime. *See Orquiza v. Walldesign, Inc.*, 2012 WL 2327685 (D. Nev. June 19, 2012). In arriving at that conclusion, the court held that "[a]ccording to the most common interpretation of both N.R.S. § 608.040 and § 608.050, penalties apply *only to the regular wages* owed to an employee for the work performed between pay periods at the time employment ended." *Id.* at *5 (emphasis added).

Plaintiff attempts to distinguish this court's holding in *Orquiza* on the grounds that that case involved alleged waiting time penalties owed to the plaintiffs by general and sub-contractors. Plaintiff urges the court to limit its interpretations of N.R.S. §§ 608.040 and 608.050 to cases involving vicarious liability and/or the construction industry.

However, in *Orquiza* the court did not limit, either explicitly or implicitly, its holding in the manner plaintiff seeks. In fact, it did not limit its reading of the statutes in any manner whatsoever. There is simply no language in *Orquiza* supporting the limited interpretation plaintiff seeks, and the court finds no reason to restrict it in such a manner.

Accordingly, the court again holds that overtime pay is not subject to waiting time penalties under Nevada law. Because plaintiff's claim fails as a matter of law, the court need not address the motion for class certification, and denies it as moot.

---

[1] The cases cited by plaintiff deal with the question of whether there exists a private right of action to enforce the payment of overtime under N.R.S. § 608.018. They do not squarely address whether waiting time penalties are available for unpaid overtime under N.R.S. §§ 608.040 or 608.050. The only case cited by either party which does address those provisions in this context is this court's decision in *Orquiza*.

**James C. Mahan**
**U.S. District Judge**

- 7 -

### IV. Conclusion

The court finds that it cannot conclusively determine that the labor commissioner's order released Wal-Mart of *all* liability, including liability for waiting time penalties. However, under this court's precedent, waiting time penalties are not available for unpaid overtime under Nevada law. As such, the motion for summary judgment must be granted, and plaintiff's motion for class certification necessarily fails.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (doc. # 52) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's renewed motion for class certification (doc. # 49) be, and the same hereby is, DENIED as moot. The clerk shall enter judgment accordingly and close the case.

DATED January 24, 2014.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 8 -