UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHARDE EVANS,<br><br>                        Plaintiff(s),<br><br>    v.<br><br>WAL-MART STORE, INC.,<br><br>                        Defendant(s). | Case No. 2:10-CV-1224 JCM (VCF)<br><br>ORDER |

Presently before the court is plaintiff Charde Evans's motion for preliminary approval of class action settlement. (ECF No. 128). Ms. Evans brings this on her own behalf, on behalf of all others similarly situated, and on behalf of proposed additional plaintiff Lisa Pizzurro-Westcott (collectively "plaintiffs"). Defendant Wal-Mart Stores, Inc. ("Walmart") has not responded, and the time to do so has passed.

**I.    Background**

The instant action arises from Walmart's alleged practice of requiring employees to work in excess of eight hours in a workday without receiving overtime pay in violation of Nevada Revised Statute ("NRS") 608.018. (ECF No. 1). This case has been heavily litigated since it was filed in 2010. The parties are familiar with this case's extensive procedural history; the court need not reiterate it.

In August 2018, this case was stayed to allow the parties to engage in private mediation. (ECF No. 102). The parties have, after a year of arm's-length negotiations, reached a resolution. Plaintiffs now move for preliminary approval of class action settlement. (ECF No. 128). Plaintiff's motion is unopposed.

**James C. Mahan**
**U.S. District Judge**

## II. Legal Standard

There is a strong judicial preference for pre-trial settlement of complex class actions as settlement of class actions is favored as a matter of "strong judicial policy." *See Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). This strong preference notwithstanding, "[a] class action shall not be dismissed or compromised without the approval of the court . . . ." Fed. R. Civ. P. 23(e). Further, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir.2003).

"Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, the court preliminarily approves the [s]ettlement pending a fairness hearing, temporarily certifies the [c]lass, and authorizes notice to be given to the [c]lass." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citations, internal quotation marks, alterations, and ellipses omitted).

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982), *cert. denied,* 459 U.S. 1217, (1983)). Rule 23's fairness factors include: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993) (quoting *Officers for Justice*, 688 F.2d at 625).

## III. Discussion

*A. Class certification*

Rule 23(a), which governs class certification, provides as follows:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff 's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *General Telephone Co. of Southwest* v. *Falcon*, 457 U.S. 147, 156 (1982)). Additionally, class certification is appropriate only where at least one section of Rule 23(b) is satisfied. *See* Fed. R. Civ. P. 23(b).

Here, the parties move to certify two classes for the purpose of settlement: the voluntary termination settlement class and the involuntary termination settlement class. (*See generally* ECF No. 128). The court has already certified the voluntary termination settlement class and need not revisit that determination. (ECF No. 100). Now, "[t]he [p]arties agree that, for purposes of settlement, the [c]ourt's partial certification order should be amended to include employees whose employment with Walmart terminated involuntarily, and that Lisa Pizzurro-Westcott should be added as an additional [c]lass [r]epresentative to represent this group of employees." (ECF No. 128 at 9). Thus, the court's certification inquiry is limited to the involuntary termination settlement class.

The parties do not dispute that numerosity is satisfied and represent that the classes consist of more than 4,300 individuals. (ECF No. 128 at 9). Thus, the court finds that numerosity is satisfied and turns to the remaining Rule 23(a) requirements.

*1. Typicality*

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative 'aligns with the

James C. Mahan
U.S. District Judge

- 3 -

interests of the class.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Under this permissive requirement, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotations omitted).

"Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (internal quotations omitted). When "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it," the court should not certify a putative class. *Hanon,* 976 F.2d at 508 (internal quotation marks omitted).

This court's analysis regarding the typicality of Evans's claims via-a-vis the voluntary termination settlement class is apropos here. The court finds no reason why Pizzurro-Westcott's claims are atypical. She, and plaintiffs like her, were not paid their continuation wages and have a private right of action against Walmart to recover them under NRS § 608.040. *See Neville v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 406 P.3d 499, 501 (Nev. 2017). Accordingly, the court finds that the typicality requirement is satisfied.

*2. Commonality*

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). In other words, "[t]heir claims must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 338.

The court finds that common legal and factual questions are central to the claims of Pizzuro-Westcott and the involuntary termination settlement class. In particular, as the parties submit, "whether or not class members who are former employees (notwithstanding if terminated voluntarily or involuntarily) were paid all their wages due and owing at the time of their

- 4 -

termination is a common factual and legal question, appropriate for certification." (ECF No. 128 at 10). Therefore, the court finds that commonality exists, satisfying Rule 23(a)(2).

### 3. Adequacy of representation

The Ninth Circuit employs a two prong test to determine whether a named plaintiff will adequately represent a class: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal citations omitted). When evaluating the adequacy of representation, courts will consider, among other things, "an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id.*

First, the court has already found that plaintiffs' counsel are adequate representatives of the voluntary termination settlement class. (ECF No. 100 at 15). The court finds no reason that plaintiffs' counsel cannot also adequately represent the involuntary termination settlement class. As a result, the court need only consider whether Pizzuro-Westcott will adequately represent absent members of the involuntary termination settlement class.

The court finds no reason why Pizzuro-Westcott would not adequately represent the involuntary termination class. In a sworn declaration, Pizzuro-Westcott has already represented that she has no conflicts of interest with any other class member. (ECF No. 106-2 at 2). Thus, the court finds that Pizzuo-Westcott will adequately represent the involuntary termination class.

Because the involuntary termination settlement class meets the requirements of Rule 23(a), the court now turns to the requirements of Rule 23(b) to determine whether certification is appropriate.

### 4. Rule 23(b)

Here, the parties contend that the criteria of Rule 23(b)(3) are met. (ECF No. 128 at 11–13). Rule 23(b)(3)'s predominance requirement presents a more stringent standard than Rule 23(a)(2)'s commonality requirement, under which a single common question suffices. *Dukes*, 564 U.S. at 359; *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013). "A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation. Thus,

[t]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 963–64 (alteration in original) (internal quotations and citations omitted).

When evaluating the superiority of a class action, courts consider the four factors provided in Rule 23(b)(3): (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514-15 (9th Cir. 2013).

The court's prior analysis certifying the voluntary termination class is also applicable here. (ECF No. 100 at 15–21). The biggest point of divergence between the analysis regarding the voluntary termination class and the involuntary termination class is that the court certified the voluntary termination class over several of Walmart's objections. *Id.* For the purposes of settlement approval, Walmart has no such objections to the involuntary termination class.

Thus, the court finds that predominance and superiority are met. Predominance is present here because this litigation stems from a single nucleus of fact: "Walmart's failure to pay continuation wages—a claim arising from Walmart's failure to pay overtime wages for 'shift jamming[.]'" (ECF No. 128 at 12 (citing *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009)).

Superiority is similarly satisfied because the thousands of individual plaintiffs' claims are for continuation wages that amount to no more than a few thousand dollars. Thus, absent a class action, individual plaintiffs would be "unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Accordingly, a class action is the superior method of resolution because it allows the individual

"plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Therefore, Rule 23(b)(3)'s requirements—predominance and superiority—are satisfied. Class certification is appropriate because both subsection (a) and subsection (b) of Rule 23 are satisfied. The court certifies the involuntary termination class for the purpose of settlement.

*B. Fairness, adequacy, and reasonableness of the settlement*

First, the court considers the strength of the plaintiffs' case and takes into account the risk, expense, complexity, and likely duration of further litigation. *Torrisi*, 8 F.3d at 1375. Litigation in this case has already lasted ten years, and the parties have both found mixed success in the instant action. The procedural posture of this case alone demonstrates the desirability of a settlement. The court further finds that the specific, nuanced, and complex legal issues in this case—some of which have been litigated, some of which the settlement would avoid—also supports the instant settlement.

There is significant risk to the plaintiffs moving forward without the instant settlement. For instance, Walmart asserted twenty-eight[1] affirmative defenses in its answer (ECF No. 32), and the parties further acknowledge that there are "numerous potentially dispositive defenses advanced by Walmart" (ECF No. 128 at 17). These additional defenses include:

> [T]hat (i) waiting time penalties are excessive, violate due process, and are thus unconstitutional; (ii) Plaintiffs' calculation of damages is incorrect because the appropriate rate of damages should be the amount of pay that an employee received 30 calendar days prior to termination; (iii) Plaintiffs have no claim for continuation wages for the group of employees terminated involuntarily, and any success on appeal from the Court's order denying Plaintiffs' motion to amend the certification order is uncertain.

(ECF No. 128 at 17).

Indeed, the risk of future litigation and the complexity of this case is demonstrated by this court's orders granting summary judgment (ECF No. 62) and denying reconsideration (ECF No. 66), which the Ninth Circuit reversed (ECF Nos. 69; 73; 75). At the very least, such thorough

---

[1] The twenty-ninth affirmative defense simply "reserves the right to amend [Walmart's] [a]nswer as additional facts, issues, or defenses may be discovered" because the parties had not started discovery when Walmart filed its answer. (ECF No. 32 at 8).

briefing at the trial and appellate levels demonstrate the ongoing cost and duration associated with protracted class action employment litigation.

This factor also supports the settlement's proposed "incentive" awards for the named plaintiffs. "[I]t is well-established that the court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation activities, including depositions." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) ("*In re Toys R Us*"). Indeed, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir.2009).

Here, Evans—who has been the named plaintiff for ten years now—has "assist[ed] her counsel at multiple stages of litigation . . . participated in multiple call conferences with counsel, provided and reviewed documents and pleadings, and was on standby during three mediation sessions." (ECF No. 128 at 16). Similarly, Pizzuro-Westcott made herself available to assist counsel on behalf of the putative involuntary termination class even though she lives in New York. *Id.*

Even more compelling is the risk that Evans could be held liable for Walmart's costs if she is ultimately unsuccessful in resolving the case. *See, e.g., Koehl v. Verio*, 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). Notably, Pizzuro-Westcott is not a named plaintiff and, as a result, does not bear the same risk. For that reason, Pizzuro-Westcott's incentive award is half of Evans's.

However, the court notes that such incentive awards must be "modest." *In re Toys R Us*, 295 F.R.D. at 470. Indeed, "concerns over potential conflicts may be especially pressing where . . . the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotation marks, alterations, and citation omitted).

The Central District of California's holding in *In re Toys R Us* is instructive. 295 F.R.D 438. The court in that case, which has been pending for almost seven years, approved incentive

awards of $5,000 to each named plaintiff, which were "consistent with the amount courts typically award as incentive payments." *Id.* at 470. (citing *In re Mego Financial Corp.,* 213 F.3d at 463 (approving a $5,000 incentive award for each class representative); *Faigman v. AT & T Mobility LLC,* No. C06–04622 MHP, 2011 WL 672648, *5 (N.D.Cal. Feb. 16, 2011) (approving an incentive payment of $3,333.33 for each of three class representatives, and noting that "[i]n [the Northern] [D]istrict, incentive payments of $5,000 are presumptively reasonable"); *Clesceri v. Beach City Investigations & Protective Services, Inc.,* No. CV–10–3873–JST (RZx), 2011 WL 320998, *2 (C.D.Cal. Jan. 27, 2011) (preliminarily approving an award of $3,000 to two named plaintiffs); *Hartless v. Clorox Co.,* 273 F.R.D. 630, 646–47 (S.D.Cal.2011) (approving an award of $4,000 for one named plaintiff and $2,000 for another); *Dennis v. Kellogg Co.,* No. 09–CV–1786–IEG (WMc), 2010 WL 4285011, *3 (S.D.Cal. Oct. 14, 2010) (preliminarily approving an incentive award of $5,000); *Aguayo v. Oldenkamp Trucking,* No. F04–6279 AWI LJO, 2006 WL 3020943, *10 (E.D.Cal. Oct. 17, 2006) (preliminarily approving a settlement agreement, which provided that class counsel would apply for an incentive award of no more than $5,000 for the named plaintiff)).

Consequently, the court finds that the incentive awards to plaintiffs Evans and Pizzuro-Westcott, once reduced, are preliminarily fair, adequate, and reasonable. The court reduces the incentive awards to $15,000 to Evans and $5,000 to Pizzuro-Westcott.

The court also considers the risk of maintaining class action status throughout the trial. *Torrisi*, 8 F.3d at 1375. Regarding this factor, the court notes that it previously denied plaintiffs' motion to amend its certification order. (ECF Nos. 106 (motion); 114 (order)). The court held that such amendment was barred by the statute of limitations. (*See generally* ECF No. 114). Thus, the instant settlement is particularly fair to the involuntary termination settlement class who, as the parties acknowledge, "would not [be] able to recover their continuation wages" without the settlement. (ECF No. 128 at 6). Notably, however, Walmart has consented to allocate 1/3 of the net settlement amount to members of that class.

The amount offered in settlement also supports a preliminary finding of fairness, adequacy, and reasonableness. *See Torrisi*, 8 F.3d at 1375. As the parties aptly note, "[t]he potential liability

for [d]efendant for [p]laintiffs' claim for 30-day wages for all terminated employees (both voluntarily and involuntarily terminated) was approximately $9,612,004.80. Thus, the settlement of $8,700,000.00 represents over 90% of the potential recovery for 30-day wages." (ECF No. 128 at 17). The $8,700,000 settlement figure is a significant recovery for the class at large, particularly in light of the parties' cited authority on this point. *See Glass v. UBS Financial Services*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of unpaid overtime wages where the settlement amount constituted only approximately 25 to 35% of the estimated actual loss to the class); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of 16.67% of the potential recovery adequate in light of the plaintiff's risks); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount of a wage and hour class action that equaled between 9% and 27% of the total potential liability to be fair, adequate and reasonable given the uncertainty of continued litigation).

Finally, the court turns to the experience and views of counsel. *Torrisi*, 8 F.3d at 1375. Not only does this factor support preliminary approval of the settlement agreement, it also supports the award of $2,900,000 in attorneys' fee and up to $65,000 in litigation costs contemplated by the settlement agreement.

Here, counsel has "undertak[en] complex, risky, expensive, and time-consuming litigation that has lasted 10 years—solely on a contingency basis." (ECF No. 128 at 14). The proposed fee award represents approximately one third of the class settlement amount, well within the range of reasonable attorney fees in such cases. *See, e.g., Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010); *Benitez v. Wilbur*, No. CV F 08-1122 LJO GSA, 2009 WL 10713095 (E.D. Cal. Dec. 15, 2009); *Chavez v. Petrissans*, No. CV F 08-0122 LJO GSA, 2009 WL 10713094 (E.D. Cal. Dec. 15, 2009); *Willis v. Cal-Western Transp.*, CIV F-00-5695 AWI LJO, 2003 U.S. Dist. LEXIS 28606 (E.D. Cal. July 25, 2003), *recommendation adopted by Willis v. Cal Western Transp.*, 2003 U.S. Dist. LEXIS 28488 (E.D. Cal. Aug. 20, 2003).

. . .

. . .

Accordingly, the court finds that the proposed settlement is, for the purposes of preliminary approval, fair, adequate, and reasonable. The court grants plaintiffs' motion for preliminary approval of class action settlement.

C. *Adequacy of the notice*

The court has reviewed the parties' proposed notice of class action settlement and finds that it is reasonable and adequate. (*See* ECF No. 128-1 at 46–53). The court finds that the notice adequately describes the purpose of the notice, nature of the lawsuit and settlement, potential opt-in plaintiffs' options under the settlement, and the consequences of opting in or out of the settlement. *Id.* Although the notice is simple and straightforward, it nonetheless instructs potential plaintiffs on how to get more information and to whom they should direct their questions. *Id.*

Thus, the court certifies the settlement classes; preliminarily approves the settlement as fair, adequate, and reasonable; and approves the notice and other ancillary forms in their present format.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for preliminary approval of class action settlement (ECF No. 128) be, and the same hereby is, GRANTED as follows:

1. The proposed settlement is preliminarily declared fair, adequate, and reasonable;
2. The court conditionally certifies the following classes solely for purposes of settlement: (1) voluntary termination settlement class, defined as: "any hourly employees of Walmart who: (i) worked at a Walmart store in Nevada between February 27, 2009 and July 31, 2010; (ii) earned 1.5 times the minimum wage per hour or less; and (iii) commenced a work shift any day less than 24 hours after commencement of their shift on the previous day; and (iv) whose employment voluntarily terminated prior to September 1, 2010;" and (2) involuntary termination settlement class defined as: "any hourly employees of Walmart who: (i) worked at a Walmart store in Nevada between February 27, 2009 and July 31, 2010; (ii) earned 1.5 times the minimum wage per hour or less; and (iii) commenced a work shift any day less than 24 hours after

commencement of their shift on the previous day; and (iv) whose employment involuntarily terminated prior to September 1, 2010";

3. Named plaintiffs Charde Evans and Lisa Pizzuro-Westcott are appointed as class representatives;

4. The court approves, as to form and content, the notice to the class of proposed settlement and the claim form, attached to the settlement agreement as exhibit 3 and exhibit 1, respectively (ECF No. 128-1 at 38–40, 45–53).

5. A qualified settlement fund shall be established and funded in accordance with Treasury Regulations § 1.468B-1, 26 C.F.R. § 1.468B-1 and the settlement agreement.

6. The court directs Walmart to provide to Simpluris, Inc., a database report showing the names, last known addresses, and social security numbers of each settlement class member no later than 14 calendar days after entry of this order;

7. Plaintiffs Charde Evans and Lisa Pizzuro-Westcott are appointed as class representatives and the court preliminarily approves incentive payments for the following amounts: $15,000.00 to plaintiff Charde Evans and $5,000.00 to Lisa Pizurro-Westcott;

8. The court appoints Thierman Buck LLP as class counsel and preliminarily approves their attorneys' fee request of $2,900,000.00 and litigation costs not to exceed $65,000.00;

9. The court orders Simpluris, Inc., to send the notice of the proposed settlement and claim form by first class mail to each settlement class member, within 14 days of receipt of the database report showing the names, last known addresses, and social security numbers of each settlement class member;

10. The acceptance period deadline shall be 45 days from the initial mailing of the notice of settlement;

11. Plaintiffs shall file their motion for final approval of the settlement within 21 days after the acceptance period deadline;

12. Responses to plaintiffs' motion for final approval, if any, will be due within 21 days of the motion;

13. Plaintiffs shall file their reply, if any, to such responses within 14 days;

14. The court shall hold a final approval hearing on July 8, 2020, at 10:00 a.m. in courtroom 6A; and

15. All other proceedings in this matter are stayed pending consideration of final approval.

DATED February 21, 2020.

_____
UNITED STATES DISTRICT JUDGE