1   Mark R. Thierman (Bar No. 8285)
    mark@thiermanbuck.com
2   Joshua D. Buck (Bar No. 12187)
    josh@thiermanbuck.com
3   Leah L. Jones (Bar No. 13161)
    leah@thiermanbuck.com
4
    THIERMAN BUCK, LLP
5   7287 Lakeside Drive
    Reno, Nevada 89511
6   Tel.: (775) 284-1500
    Fax.: (775) 703-5027
7

8   David R. Markham (*Pro Hac Vice*)
    dmarkham@markham-law.com
9   THE MARKHAM LAW FIRM
    750 B Street, Suite 1950
10  San Diego, CA 92101
    Tel.: (619) 399-3995
11  Fax.: (619) 615-2067

12
    *Attorneys for Plaintiffs*
13

14                UNITED STATES DISTRICT COURT

15                      DISTRICT OF NEVADA

16  | CHARDE EVANS, on behalf of herself, and | Case No.: 2:10-CV-1224-JCM-VCF |
17  | all others similarly situated, | **PLAINTIFF'S MOTION FOR FINAL** |

18  Plaintiff, | **APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS** |
19  v.

20  WAL-MART STORES, INC., and DOES 1
    through 50, Inclusive,
21
                                           **HEARING DATE**: July 8, 2020
22  Defendant.                             **TIME**:10:00 a.m.
                                           **DEPT**:Courtroom 6A
23                                         **JUDGE**: Hon. James C. Mahan

24

25          Plaintiffs CHARDE EVANS and LISA PIZZURRO-WESTCOTT (collectively

26  "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their

27  attorneys of record, hereby move this honorable Court for an Order Granting Final Approval of

28

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

the Class Action Settlement.[1]  Plaintiff and Defendant Wal-Mart Stores, Inc. a/k/a Walmart Inc. ("Walmart") (collectively referred to as "the Parties") reached an overall agreement to settle this action, which was preliminarily approved by the Court on February 24, 2020 (ECF No. 129).

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") Plaintiffs seek this Court's final approval of the Parties' "Joint Stipulation of Settlement and Release between Plaintiff and Defendant" ("Settlement Agreement") and hereby move the Court for an order granting final approval of their class settlement, approval of class representatives' enhancement payment, and approval of attorneys' fees and costs.

This Motion is based on this Notice of Motion and Motion for Final Approval of Settlement with Defendants, the following memorandum of points and authorities, the Settlement Agreement previously filed with this Court as an attachment to the Declaration of Joshua D. Buck at ECF No. 128-1, the Declaration of Settlement Administrator Cassandra Cita, the Declarations of Plaintiffs Charde Evans and Lisa Pizzurro-Westcott, the Declarations of Class Counsel Joshua D. Buck, Mark R. Thierman, and David R. Markham filed in support of this motion, the pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: June 05, 2020                                    Respectfully submitted:

                                                                    **THIERMAN BUCK LLP**


                                                        By: /s/ *Joshua D. Buck*
                                                                    Mark R. Thierman
                                                                    Joshua D. Buck
                                                                    *Attorneys for Plaintiffs*

---

[1] Walmart does not concede the Plaintiffs' allegations, nor does it concede all of the factual statements set forth in Plaintiffs' memorandum or accompanying declarations or other briefing, but for purposes of this settlement, Walmart does not oppose or object to the filing of this motion for final approval.

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On February 24, 2020, the Court entered an order granting preliminary approval of the Settlement in the above captioned case. *See* Preliminary Approval Order dated February 24, 2020, ECF No. 129 (the "Preliminary Order"). In addition to preliminarily approving the overall settlement (the "Settlement"), the Preliminary Order conditionally certified the settlement classes, approved a notice of preliminary approval to class members, scheduled the final approval and fairness hearing, and confirmed the selection of Simpluris as the claims administrator. *Id.*

The Parties settled this action for a Class Settlement Amount of $8,700,000.00 to be paid to class members on a claims-made basis. All of the terms of the Settlement have been agreed upon and are as follows:

- $5,640,000.00[2] in estimated settlement funds available to the Class on a claims made basis;
- No more than $50,000.00 to the Claims Administrator, Simpluris for reasonable fees and expenses;
- $20,000.00 in total incentive awards distributed as a $15,000.00 Incentive Payment to Plaintiff and Class Representative Charde Evans, and a $5,000.00 Incentive Payment to Plaintiff and Class Representative Lisa Pizzurro-Westcott for their service as Class Representatives;
- $2,900,000.00, or approximately one-third of the Class Settlement Amount to Class Counsel for attorneys' fees; and
- $65,000.00 in total litigation expenses.[3]

The claims administration procedures ordered by the Court have been completed as summarized in the declaration prepared by Cassandra Cita of Simpluris Claims Administration.

---

[2] The final net settlement amount is subject to change, depending on final approval of the actual settlement administration costs, the class representative incentive payments, and fees and costs to be awarded to Class Counsel.

[3] Walmart has taken no position on the amount requested for Attorneys' Fees and Litigation Expenses, and will not object to a reasonable request by class counsel.

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

1   *See* Declaration of Casandra Cita, hereinafter "Cita Dec." filed concurrently herewith.  The Notice

2   and all related materials were distributed to the Settlement Class, and all deadlines for settlement

3   class members to submit claim forms, opt out of, or object to the Settlement have passed.  No

4   objections were received and no class member out of 4,358 potential class members requested

5   exclusion from the settlement. *See* Cita Dec., ¶¶ 5, 9-11.

6   **II.    SUMMARY OF THE NOTICE PROCESS**

7          A summary of the litigation, terms of the Parties' settlement agreement (the "Settlement

8   Agreement"), and fairness and adequacy of the Settlement including Plaintiffs' request for

9   preliminary approval of attorneys' fees and costs, and class representative enhancement payments

10  were set forth in Plaintiffs' Motion for Preliminary Approval and related declarations (ECF No.

11  128 – 128-3), which Plaintiffs incorporate by reference.  Defendant did not oppose.  *Id.*  Pursuant

12  to the Preliminary Order, Defendant provided Simpluris with the last known addresses of all

13  settlement class members on March 9, 2020.  *See* Cita Dec., ¶ 5.  On March 23, 2020, Simpluris

14  mailed 4,358 settlement notice packets to Class Members in the form approved by the Court.  *Id.*,

15  ¶ 7.  The Notice provided that Class Members had until May 7, 2020 to submit claims or written

16  exclusions or objections to the settlement.  *See* Exhibit A to the Cita Dec., ¶¶ 4, 7.  Of the

17  settlement packets initially mailed to class members, 1,768 Notices were returned by the United

18  States Postal Service as undeliverable.  *Id.*, ¶ 8.  For each of these returned packets, Simpluris

19  performed an address search and was able to locate and re-mail notices for 1,561 class members.

20  *Id.*  A total of 217 Notice packets remained undeliverable.  *Id.*

21         To date, Simpluris has received zero Requests for Exclusion from the Settlement. *Id.* at ¶

22  10.  No objections to the Settlement were received by Simpluris or counsel.  *Id.,* ¶ 11; *see also*

23  Declaration of Joshua D. Buck ("Buck Dec.") at ¶ 17.   The largest settlement share was

24  approximately $2,625.00, and the average settlement share was $1,387.00.  *Id.* at ¶ 12.

25  **III.   ARGUMENT**

26         Three steps must be satisfied for final approval of the Settlement Agreement. *First*, the

27  Court must certify the settlement classes. *Second*, the Court must find that the classes received

28  adequate notice under Federal Rule of Civil Procedure 23(c)(2)(B).  *Third*, the Court must decide

- 4 -
**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

whether the Settlement Agreement is "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard).  These requirements have all been met here.

### A.    The Settlement Classes Should Be Finally Certified

In the order granting preliminary approval, this Court provisionally certified the same settlement class under Rule 23.  (ECF No. 129.)  The same analysis applies here; accordingly, the Class should be finally certified for settlement purposes under Rule 23(e), for the same reasons set forth in plaintiffs' motion for preliminary approval of the Settlement Agreement.[4]  (ECF No. 128.)

### B.    Plaintiffs Have Complied With The Rule 23(c) Notice Requirements

A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions, and upon settlement, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

This Court approved the proposed class notice and notice process.  The Settlement Administrator appointed by the Court (Simpluris) implemented the notice process.  *See* Cita Dec. at ¶¶ 3-7.   Over 95.23% of the class members received notice, which far exceeds the constitutional requirement for notice.  *Id.*  The notice itself informed class members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements.  *See* Cita Dec., ¶ 4, Exhibit A "Notice Packet.")  Accordingly, the Notice to Class Members complies with all of the requirements of Rule 23.

### C.    The Settlement Agreement Is Fair, Adequate, And Reasonable

---

[4] Walmart does not concede that certification is appropriate, however Walmart does not object to certification of the classes here, solely for purposes of settlement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (internal citation and quotation marks omitted).

In determining whether a settlement agreement is fair, adequate, and reasonable, the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Courts are not required to assess whether the settlement is ideal or

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

1    the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with

2    Plaintiff's fiduciary obligations to the class." *Hanlon*, 150 F.3d at 1027.

3          All of these factors support approval of the Settlement Agreement.

4          **1.    The strength of plaintiffs' case supports final approval.**

5          In assessing the strength of plaintiffs' case, the Court should not reach "any ultimate

6    conclusions regarding the contested issues of fact and law that underlie the merits of this

7    litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 at 625 (9th Cir. 1982).

8    Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the

9    litigation and the impact of those considerations on the parties' decisions to reach these

10   agreements." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D.

11   Ariz. 1989).   The Court's assessment of the likelihood of success is "nothing more than 'an

12   amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice*,

13   688 F.2d at 625 (internal citations omitted).   Here, based upon the Parties' evaluation of the

14   merits and defenses, this factor weighs in favor of final approval.

15         Plaintiff Charde Evans filed her original complaint against Defendant in the United States

16   District Court, District of Nevada on July 22, 2010.   Plaintiff alleged that she and others similarly

17   situated were required to work in excess of eight hours in a workday (defined by NRS 608.0126

18   as a rolling 24-hour period of time) without receiving overtime pay in violation of Nevada Revised

19   Statute ("NRS") 608.018.   (ECF No. 1.)   As a result of this violation, Plaintiff alleged that all

20   former employees who were not properly compensated their daily overtime pay were also entitled

21   to recover continuation wages pursuant to NRS 608.040 and NRS 608.050.   Defendant

22   compensated all adversely affected employees the underlying daily overtime owed via the Nevada

23   Labor Commissioner.   The only remaining issue in the case was whether Plaintiff and other

24   employees were entitled under Nevada law to recover continuation wages as a result of not having

25   received their daily overtime wages.

26         Plaintiffs believe their state law claims are strong but understand that success is far from

27   guaranteed.   Here, without settlement, Defendant would seek to decertify the class that had been

28   certified and/or move for summary judgment on the grounds that (1) waiting time penalties are

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

excessive, violate due process, and are thus unconstitutional; (2) Plaintiffs' calculation of damages is incorrect because the appropriate rate of damages should be the amount of pay that an employee received 30 calendar days prior to termination; (3) Plaintiffs have no claim for continuation wages for the group of employees terminated involuntarily, and any success on appeal from the Court's order denying Plaintiffs' motion to amend the certification order is uncertain and (4) challenge class treatment as in appropriate.  Defendant believes its defenses are strong, but understands they are subject to the same risks as those faced by Plaintiffs.  Likewise, although Plaintiffs assert that the class claims are meritorious, Plaintiffs recognize that their action is certainly not without risk.  *See Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011).  In short, the Settlement provides Plaintiff and the Settlement Classes relief after ten years of litigation, whereas continued litigation could lead to an unpredictable or adverse result for Plaintiffs, with potential not only for a loss after further litigation but also for a loss after protracted and costly additional appeals.  This factor thus weighs in favor of settlement.

### 2. The risk, expense, complexity, and duration of further litigation supports final approval.

Settlement is preferable to lengthy and expensive litigation with uncertain results.  *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *7 (D. Nev. Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev. Jan. 18, 2013).

As this Court is well aware, this action has been heavily litigated.  Plaintiff Evans filed her first motion to certify a class on July 24, 2012, and renewed it on April 2, 2013.  (ECF Nos. 39 and 49.)  On January 24, 2014, the Court granted Walmart's motion for summary judgment and denied Plaintiff's first renewed motion to certify a class as moot.  (ECF No. 60.)  The Ninth Circuit reversed the Court's grant of summary judgment and remanded.  (ECF No. 69.)  The Ninth Circuit held that Evans was entitled to seek waiting time penalties under NRS §§ 608.040 and 608.050 because: (1) Walmart's settlement with the Nevada Labor Commissioner did not address waiting time penalties, (2) overtime pay is a form of wages under both NRS § 608.040 and Nevada law, and (3) Evans was employed pursuant to an oral contract. (ECF No. 69.)

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

1     After the Ninth Circuit's reversal and remand, Plaintiff filed a second renewed motion for

2  class certification.  (ECF No. 70.)  The case was subsequently stayed, pending the determination

3  by the Nevada Supreme Court's decision on whether or not a private right of action exists to

4  pursue claims under NRS Chapter 608.  *Neville v. Eighth Judicial District Court in & for County*

5  *of Clark*, 406 P.3d 499 (2017).  On December 7, 2017, the Nevada Supreme Court decided

6  *Neville*, holding that "NRS Chapter 608 provides a private right of action for unpaid wages."

7  *Neville*, 406 P.3d at 500.  On December 29, 2017, Plaintiff renewed her motion for class

8  certification.  On July 11, 2018, the Court partially granted Plaintiff's motion, certifying a class

9  of employees who voluntarily terminated employment with Walmart under NRS § 608.040.  (ECF

10  No. 100.)  The court ordered the Parties to brief the content and timing of the class notice.

11     The case was subsequently stayed to allow Parties to engage in private mediation.  (ECF

12  No. 102.)  The Parties engaged in three mediation sessions, but the mediations were unsuccessful.

13  On November 7, 2018, Plaintiff filed a motion to amend the partial certification order, and a

14  motion to amend complaint to add an additional plaintiff, Ms. Pizzurro-Westcott, who could

15  represent a class of employees who terminated their employment with Wal-Mart involuntarily,

16  under NRS 608.040 and NRS 608.050.  (ECF Nos. 106-107.)  The Court denied Plaintiff's

17  motions on July 24, 2019.  (ECF No. 114.)

18     Next, the Parties filed a discovery plan and agreed upon a proposed notice to the certified

19  class. (ECF Nos. 116 and 122.)  At the same time, the Parties continued the settlement dialogue,

20  and after a year of contentious, arm's length negotiations following the last mediation session, the

21  Parties settled this case.  *See* Buck Dec., ¶ 7.

22     Finally, on February 24, 2020 the Court granted Plaintiffs' unopposed Motion for

23  Preliminary Approval of Class Action Settlement and allowed Plaintiff Lisa Pizzurro-Westcott to

24  be added as a Named representative Plaintiff.  (ECF No. 129.)

25     Here, without settlement, the Parties would engage in further lengthy appeal and motion

26  practice.  There would be briefing on the class certification issue and summary judgment.  Trial

27  would involve extensive testimony from numerous witnesses.  And, any final judgment would

28  likely be appealed, thereby extending the duration of the litigation even more.  Settlement avoids

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

further expense and delay, and guarantees a recovery to class members as touched on in factor (a) directly above.  Therefore, the risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation.  *Harris*, 2012 WL 6900931, at *7.  Accordingly, this factor weighs in favor of final approval.

### 3.  The risk of maintaining class action status through trial.

As discussed in section III.C.2. directly above, Plaintiffs have faced and would continue to face significant risks through appealing the partial certification order, obtaining, and then maintaining full Rule 23 class action status if this litigation proceeds.  Thus, this factor, too, favors final approval of settlement.

### 4.  The amount offered in settlement supports final approval.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted).  A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial.  *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) *abrogated on other grounds* (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved).

Here, the gross settlement fund amount of $8,700,000.00 is reasonable when balanced against the possible outcome of further litigation and probable appeals.  Of the $8,700,000.00 maximum settlement amount, $5,640,000.00 was made available to settlement class members representing nearly 65% of the maximum settlement amount.  *See* Buck Dec. at ¶ 11.  The 65% of the settlement class fund, made available to currently employed and formerly employed class members, represents an exceptional recovery for the class, even without accounting for the risks that on appeal, full class treatment would be denied, or that defendants would prevail on the merits.  *Id.*; *see Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *In re Mega Fin.*, 213 F.3d at 459.  Based on the claims

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

1  received, approximately $209,420.00 of the Net Settlement Fund will be distributed to the 151

2  Participating Class Members, or 3.7%. *See* Cita Dec., ¶ 12. The highest payment to former

3  employees is $2,625.00, while the average payment to a former employee class member will be

4  $1,387.00. *Id.*

5       In addition, under the terms of the settlement, benefits will be conferred on employees

6  who voluntarily terminated and on those who involuntarily terminated employment with

7  Defendant. Without settlement the relief that members of the involuntarily terminated class

8  members were likely to achieve ranged from negligible to zero. *See* Buck Dec., ¶ 13. The present

9  settlement benefits both the Voluntary and Involuntary Classes as compared to the probability

10 that this litigation would continue for many more years in the absence of settlement, plus the risk

11 that Plaintiffs would not succeed at trial. These factors as well weigh in favor of a finding that

12 the terms of the settlement are fair, adequate, and reasonable because the amount offered is nearly

13 90% of the potential recovery for 30-days wages for all terminated employees. *Id.*, ¶ 12. Of the

14 151 claims received, 77 claims were from the Voluntary Terminations Class and 74 claims were

15 from the Involuntary Termination Class. *See* Buck Dec., ¶ 18; Cita Dec., ¶ 12. Thus, this factor

16 weighs in favor of final approval.

17       **5.      The extent of discovery completed and stage of proceedings supports
18              final approval.**

19       The extent of the discovery conducted and the stage of the litigation are both indicators

20 of counsel's familiarity with the case and of their having sufficient information to make an

21 informed decision. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

22 "A settlement following sufficient discovery and genuine arms-length negotiation is presumed

23 fair." *See Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *10

24 (N.D. Cal. Feb. 2, 2009). The parties here conducted extensive discovery, thoroughly testing the

25 claims and defenses available in this case.

26       As discussed in section III.C.2. above, this case has been pending for nearly ten years, a

27 successful appeal by Plaintiffs at the Ninth Circuit, a stay pending the Nevada Supreme Court's

28 decision on the private right of action issue, two motions for class certification, and three

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

1   mediations.   Accordingly, this Settlement, following sufficient discovery and genuine arms-

2   length negotiation (in addition to extensive motion practice), must be presumed fair.   *See City*

3   *P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).   Thus, this

4   factor weighs in favor of final approval.

5              **6.**      **The experience and views of Class Counsel support approval.**

6          "The recommendations of plaintiffs' counsel should be given a presumption of

7   reasonable-ness."   *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

8   2007) (citation and internal quotation marks omitted).   Here, plaintiffs' counsel—wage and hour

9   class action lawyers with many years of experience—support the settlement. *See e.g.* Buck Dec.,

10   ¶¶ 2, 14, Declaration of Mark R. Thierman ("Thierman Dec."), ¶¶ 2, 9, Declaration of David R.

11   Markham ("Markham Dec."), ¶¶ 3-11, 15. Because Class Counsel are closely acquainted with

12   the underlying litigation, significant "weight is accorded to the recommendation of counsel."

13   *Nat'l Rural*, 221 F.R.D. at 528 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104,

14   125 (S.D.N.Y. 1997)).   Plaintiff is represented by counsel with broad experience in complex

15   employment litigation.   *See generally* Buck Dec.; Thierman Dec.; Markham Dec.   Plaintiffs'

16   counsel recommends that the Settlement be approved since they believe it is fair, reasonable, and

17   adequate to the proposed class and because it reflects a reasoned compromise that takes into

18   consideration the inherent risks in all employment class litigation and in particular this action.

19   *See Nat'l Rural, supra*.   Given the experience of the attorneys involved in this litigation, the

20   Court should credit counsels' view that the settlement is fair, reasonable, and adequate.   *See*

21   *Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel better positioned than courts

22   to produce a settlement that fairly reflects each party's expected outcome).   Accordingly, this

23   factor weighs in favor of final approval as well.

24              **7.**      **The non-presence of a government participant supports final**

25                     **approval.**

26          "No governmental entity participated in this matter; this factor, therefore, is irrelevant to

27   the Court's analysis."   *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 U.S. Dist. LEXIS 43672, at

28   *48 (N.D. Cal. Mar. 24, 2017). *Accord*, *Sciortino v. PepsiCo, Inc.*, No. 14-cv-00478, 2016 U.S.

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

Dist. LEXIS 83937, at *20 (N.D. Cal. June 28, 2016) ("Because there is no government participant in this case, this factor is inapplicable.").

### 8.   The reaction of the classes supports final approval.

The absence of any objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members. *Nat'l Rural*, 221 F.R.D. at 529; *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010).  Here, approximately 96% of the notice packages were successfully mailed.  *See* Cita Dec., ¶ 8.  No objections to the settlement were received, no class member disputed the workweeks worked, and no class member requested exclusion.  *Id.* at ¶¶ 9-11.  *See also, Lee V. Enterprise leasing Co.-West,* 2015 WL 2345540, *7 (D. Nev. 2015) (noting 11% rate does not indicate proposed settlement is not fair, reasonable, and adequate given the lack of objections and small number of opt-outs, "does not cast doubt on what appears to be a beneficial settlement for the class members.")  According to Defendant's records and calculations, of the 151 claims, there are 77 claims from the Voluntary Terminations Class and 74 claims from the Involuntary Termination Class.  *See* Cita Dec., ¶ 12. The highest claim mount was approximately $2,625.00 and the lowest claim amount was $365.00. *Id. T*he average settlement amount was $1,387.00.  *Id*.  Thus, Class Members received $209,420.00 of the $5,634,000.00 class settlement fund, equal to 3.7%.  *Id.*

These facts suggest approval of the settlement by the entire class.  Therefore, this factor also favors final approval of the settlement.  *See Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections were filed and one of 2,765 class members requested exclusion from settlement).

### C.   The Claims Administration Expenses Are Reasonable And Should Be Approved.

As described in the Simpluris Claims Administration LLC declaration, the Parties, through the settlement administrator, successfully implemented the notice procedure approved by the Court.  *See* Cita Dec., generally.  Although the Court has preliminarily approved and the Notice to Class Members has disclosed a potential administration fee of $50,000.00, Simpluris

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

1  has already calculated and submitted a proposed invoice for administrative fees and costs,

2  including estimated future costs to process payments and taxes of $36,805.00, which is

3  significantly less than the $50,000.00 fee provided in the Notice to Class Members.  *See* Cita

4  Dec., ¶ 13, Exhibit B.  This amount is reasonable given the excellent results obtained and given

5  that there have been no objections by any Class Member.

6          **D.**    **The Class Representative Enhancement Awards Should Be Approved.**

7       In the Court's Preliminary Order, the Court allowed for a total of $20,000.00 in class

8  representative enhancement awards for services Plaintiff Evans and Plaintiff Pizzurro-Wescott

9  rendered to the Class.  The awards are broken down to $15,000.00 for Ms. Evans and $5,000.00

10  for Ms. Pizzurro-Wescott, which is separate from any other amount Plaintiffs are entitled to

11  receive under the Settlement as a member of the settlement classes.  Such enhancements are

12  routinely awarded to compensate named plaintiffs for the services they provide in prosecuting a

13  class action.  *See, e.g., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)

14  (enhancement awards of $30,000 to each named plaintiff for services provided to class), *Van

15  Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000

16  participation award).

17       The enhancement award of between $5,000.00 and $15,000.00 is reasonable in light of

18  the assistance the Named plaintiffs provided.  *See In Lo Re v. Chase Manhattan Corp.*, No. 76

19  Civ. 154 (MJL), 1979 WL 236, at *6 (S.D.N.Y.  May 25, 1979).  Specifically, Named Plaintiff

20  Charde Evans has been a named Plaintiff in this action for over ten years, assisting her counsel at

21  multiple stages of the litigation throughout the decade-long litigation, which included appellate

22  review and contentious litigation.  *See* Declaration of Charde Evans ("Evans Dec."), ¶¶ 7, 9; Buck

23  Dec., ¶ 15.  This included making herself available for three, full-day mediation sessions,

24  searching out counsel in the first place, providing documents and review of all pleadings, as well

25  as maintaining contact with counsel and engaged in the case for the past ten-plus years.  *Id.*, ¶¶

26  7-9; Buck Dec., ¶ 15.  Plaintiff Evans has provided invaluable assistance to Plaintiffs' counsel at

27  great risk to herself professionally.  *Id.,* ¶¶ 10-11; Buck Dec. ¶ 15. Plaintiff Evans also understood

28  that she had an obligation to place the interests of the class as a whole above her own personal

interests in an effort to advance the case to a favorable outcome on their behalf.  *Id.,* ¶ 5.  In addition, if Plaintiffs did not prevail, as Class Representative she could have been liable for Defendants' costs.  *Id.,* ¶ 10.  Ms. Evans is proud of her participation in the lawsuit on behalf of her fellow employees and is very pleased  outcome of the case.  *Id.,* ¶ 6.

Plaintiff Pizzurro-Westcott stepped in to represent a group of the involuntarily terminated employees, and made herself available to further assist counsel in this litigation, even though she lives in New York.  *See* Declaration of Lisa Pizzuro-Westcott ("Pizzuro-Westcott Dec."), ¶¶ 8, 10-12, 14; Buck Dec., ¶ 16.  Ms. Pizzurro-Westcott made herself available for three, full-day mediation sessions, searching for old documents, providing information via telephone, text, and email whenever her counsel needed, including rearranging her schedule due to the 3-hour time difference.  *Id.*  Plaintiff Pizzurro-Westcott has provided invaluable assistance to Plaintiffs' counsel at great risk to herself professionally.  *Id.,* ¶ 13; Buck Dec., ¶ 16. Plaintiff Pizzurro-Wescott also understood that she had an obligation to place the interests of the class as a whole above her own personal interests in an effort to advance the case to a favorable outcome on their behalf.  *Id.,* ¶ 8.  In addition, if Plaintiffs did not prevail, as Class Representative she could have been liable for Defendants' costs.  *Id.,* ¶ 13.  Ms. Pizzurro-Wescott is also very pleased  outcome of the case and feels proud to have helped her fellow employees.  *Id.,* ¶ 9.

Moreover, the Settlement Class Members were notified of the requested incentive awards for both Named Plaintiffs and none objected.  *See In Lo Re*, 1979 WL 236, at *6 (no class member objections supports approval of enhancement awards).  In sum, because of the Named Plaintiffs, this litigation has resulted in a valuable benefit to the Settlement Class Members.  Thus, Plaintiffs' enhancement payments should be approved.

### D.    Class Counsel's Fees And Costs Should Be Approved

The Court has previously preliminarily approved Plaintiffs' requests for attorney's fees and cost associated in litigating this case as fair, adequate, and reasonable.  *See* Preliminary Order, ECF No. 129 at § B, pp. 9-11.  Courts have long recognized that when Counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole.  *See, e.g.*, *Boeing*

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

*Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole").  The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund.  *See*, *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984).  The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients and, unless attorneys' fees are paid out of the common fund, those who benefit from the fund will be "unjustly enriched."  *Boeing*, 444 U.S. at 478.  To prevent this result, courts exercise their inherent equitable powers to assess attorney's fees against the entire fund, thereby spreading the cost of those fees among all those who benefit from it.  *Id.*

### 1.     The Fee Award should be calculated as a percentage of the common fund.

Most circuits, including the Ninth Circuit, vest the district court with discretion in a common fund case to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  The fairest way to calculate a reasonable fee when contingency fee litigation has produced a common fund—and the way that best promotes efficiency in litigation—is by awarding Class Counsel a percentage of the total fund.  *See, e.g., Blum,* 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989); *Morganstein v. Esber,* 768 F. Supp. 725, 728 (C.D. Cal. 1991).

The percentage of the fund method has been adopted by the courts because it comports with the legal marketplace, where counsel's success is frequently measured in terms of the results they have achieved. *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1269 (D.C. Cir. 1993).  By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented."  *Id.* (internal quotations and citations omitted).  The percentage of the fund approach mirrors this aspect of the

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, Paul, Johnson, Alston & Hunt*, 886 F.2d at 271; *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007). Indeed, the retainer agreement signed by Plaintiffs set forth the fact that the attorneys' fees in this case must be approved by the court but that attorneys' fees sought may be awarded up to 33.3% of the total recovery. *See* Buck Dec., ¶ 24. Furthermore, the Notice to Class Members included the amount of fees sought by Class Counsel providing the opportunity for Class Members voice their opinion as to the appropriateness of Class Counsel's fee request prior to final approval. *See* Exhibit A, attached to the Cita Dec., "Notice Packet" at pp. 3-4. No Class Member objected. *See* Buck Dec., ¶ 24; Cita Dec., ¶ 11.

The percentage approach to common fund fee awards has other benefits and advantages as well. Most notably, it aligns the incentives of the class members and their counsel and thus encourages counsel to both spend their time efficiently and maximize the size of the class's recovery, rather than their own lodestar hours. *See e.g., In re Activision Sec. Litig.,* 723 F. Supp. at 1375 (N.D. Cal. 1989); *State of Fla. v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n. v. Dunkley*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). Indeed, if plaintiffs' attorneys were not able to use the common fund method approach, they would be incentivized to "churn" cases solely to justify their fee award. The percentage method is also easier for courts to calculate than any alternative method, since, unlike the lodestar multiplier method, it does not require courts to evaluate the reasonableness of hours incurred or hypothesize about how day-to-day or hour-by-hour decisions might have been made differently by counsel. *In re Activision Sec. Litig.,* 723 F. Supp. at 1378. In light of these benefits, courts have resoundingly approved the percentage of the fund method for calculating a reasonable fee award in common fund cases.

THERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com; www.thermanbuck.com

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

**2.      The requested Fee Award is consistent with the applicable Ninth Circuit awards.**

The Ninth Circuit adjusts upward (or downward) to account for any unusual circumstances involved in [the] case from a 25 percent 'benchmark' in percentage-of-the-fund cases.  *See e.g., Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1006 (9th Cir. 2002) (citation omitted); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *In re Pacific Enterprises Sec. Litig.,* 47 F.3d 373, 379 (9th Cir.1995) (affirming fee award equal to 33% of $12,000,000.00 fund); *Garner v. State Farm Ins.,* 2010 WL 1687829 (N.D. Cal. April 22, 2010) (awarding fee of 30% of the $15 million settlement fund); *In re Activision Sec. Litig.,* 723 F.Supp. at 1375 (32.8% fee); *Linney v. Cellular Alaska P'ship,* 1997 WL 450064, *7 (N.D.Cal.1997) (33.3% fee); *In re Heritage Bond Litig,* 2005 WL 1594403, at *18, n.12 (C.D. Cal Jun. 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30%).

Here, the Court has already preliminarily approved Class Counsel's request of 33.3% (approximately one-third of the settlement fund) which is in-line with fee awards approved in the Ninth Circuit.  *See e.g.*,  *Bennett v. Simplexgrinnell LP,* 2015 WL 12932332 at *7 (N.D. Cal. 2015) (awarding fee of 38.8% plus costs of the $4,900,000.00 settlement fund);  *Antonopulos v. North American Thoroughbreds, Inc.,* 1991 WL 427893, at *1, *4 (S.D.Cal. May 6, 1991) (awarding one-third); *Hernandez v. Kovacevich,* 2005 WL 2435906, *8 (E.D.Cal. Sept. 30, 2005) (32.5% fee).  Courts in other Circuits have also awarded attorney fees in amounts equal to or greater than 30% of the common fund as well.[5]

---

[5] *See, e.g.,  Nichols v. SmithKline Beecham Corp.,* 2005 WL 950616, at *1, *24 (E.D.Pa. April 22, 2005) (awarding fee equal to 30% of a $65 million fund comprising of between 9.3% and 13.9% of total damages.); *In re Combustion, Inc.,* 968 F.Supp. 1116, 1136–1141 (W.D.La.1997) (awarding fee equal to 36% of the settlement fund); *In re Buspirone Antitrust Litig.,* No. 01–MD–1410, at 4, 42–45 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of a $220 million dollar fund, which produced a multiplier of 8.46); *In re Cardizem CD Antitrust Litig.,* No. 99–MD–1278, at 18–20 (E.D.Mich. Nov. 26, 2002) (awarding 30% of a $110 million dollar fund, which produced a multiplier of 3.7); *In re Vitamins Antitrust Litig.,* No. 99–197, MDL 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding about 34% of about a $360 million dollar fund); *Kurzweil v. Philip Morris Cos.,* Nos. 94 Civ. 2373, 94 Civ. 2546, 1999 WL

---

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989).   Courts in wage and hour cases in this Circuit, where the common fund is under $10 million, tend to award attorneys' fees in the 30% - 40% range.  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five wage and hour class actions where courts approved fee awards ranging from 30 to 33%).  According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6.

Courts consider the following factors to determine whether to apply either an upward or downward adjustment from the benchmark: (1) the results obtained by counsel; (2) the risks and complexity of issues in the case; (3) whether the attorneys' fees were entirely contingent upon success and whether counsel risked time and effort and advanced costs with no guarantee of compensation; (4) whether awards in similar cases justify the requested fee; and (5) whether the class was notified of the requested fees and had an opportunity to inform the Court of any concerns they have with the request.  *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *2 (N.D. Cal. Dec. 6, 2017).  Here, each of these factors supports an upward adjustment to the 33.3% fee requested.

### a. *The result obtained by counsel.*

Of the relevant factors considered, the "most critical factor" in determining appropriate attorneys' fees "is the degree of success obtained."  *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983); *see also In re Bluetooth*, 654 F.3d at 942; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  Class Counsel respectfully submit that the result achieved in this case, is exceptional and justifies the full fee requested.

---

1076105, at *1–2 (S.D.N.Y. Nov.30, 1999) (awarding 30% of about a $124 million dollar fund, which produced a multiplier of 2.46).

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

The $8,700,000.00 cash settlement amount is outstanding.  *See* Buck Dec. at ¶¶ 10-13. The maximum potential liability for Defendant for Plaintiffs' claim for 60-day wages is approximately $19,224,009.60 (derived by multiplying 4,358 class members by the $4,411.20, which is the number of daily wages ($9.19 average hourly rate x 8 hours x 60 days)), or $9,612,004.80 for 30-day wages.  *See* Buck Dec. at ¶ 12. Thus, the settlement of $8,700,000.00 represents over 45% of Defendant's maximum potential liability for 60-day wages, or over 90% of the maximum potential recovery for 30-day wages.  *Id.*  This is an excellent result, exceeding the range of typical recoveries in wage and hour actions.  *See Glass v. UBS Financial Services*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of unpaid overtime wages where the settlement amount constituted only approximately 25 to 35% of the estimated actual loss to the class); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of 16.67% of the potential recovery adequate in light of the plaintiff's risks); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014)  (finding settlement amount of a wage and hour class action that equaled between 9% and 27% of the total potential liability to be fair, adequate and reasonable given the uncertainty of continued litigation).

Accordingly, this factor supports Counsel's request for 33.3% of the common fund.

> b.   *The risk and complexity of the Case supports the fees requested.*

Class action cases such as this are, by definition, inherently complex.  Obtaining class certification, defeating a motion to dismiss, preparing for and participating in mediation and an appeal to the Ninth Circuit, with an eye to developing a class-wide trial plan consistent with due process and maintaining class certification through trial are complex issues that require specialized knowledge and skill.  Buck Decl. ¶ 9.  Additionally, litigating a large class action (i.e., over 4,500 class members) against a well-funded and respected Defendant like Walmart represented by highly skilled defense counsel requires attorneys who are willing to take substantial risks.[6]  There is no doubt that the quality of defense counsel at Greenberg Traurig

---

[6]  Indeed, the attorneys at Thierman Buck, LLP and the Markham Law firm took substantial risk with this case including appeal to the Ninth Circuit in this case and the appeal to the Supreme Court of Nevada in the *Neville* case.

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

both increased the risks of this case and required Class Counsel to devote more resources to litigating this action.  Litigating against experienced counsel and a well-funded defendant, as was the case here, is a factor further justifying the upward adjustment to 33.3%.  *See e.g., In re Nat'l Collegiate Athletic Ass'n,* 2017 WL 6040065, at *3; *De Mira v. Heartland Employment Service, LLC.,* 2014 WL 1026282, at *2 (N.D. Cal. 2014) ("Defendant was represented by an experienced and well-resourced defense firm.  Had Class Counsel failed to vigorously prosecute this case, it is unlikely that this settlement could have been achieved"); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001), *aff'd,* 290 F.3d 1043 (9th Cir. 2002) ("Class Counsel's risk was even greater, and their work made more difficult, because Microsoft is one of the nation's largest and most formidable companies and it, and several law firms, defended the case vigorously for several years.")

Accordingly, this factor supports Counsel's request for 33.3% of the common fund.

---

Additionally, the attorneys at Thierman Buck, LLP took substantial risk in *Busk v. Integrity Staffing Solutions, Inc.,* Case No. 2:10-CV-01854-RLH-RJJ.  *Busk* was originally filed in the United States District Court District of Nevada on October 22, 2010, Counsel was successful on their appeal to the Ninth Circuit on a matter of first impression where the Court held FLSA collective actions and state law class actions could be brought in the same federal lawsuit (*Busk v. Integrity Staffing Solutions,* 713, F.3d 525 (2013)), which remains good law today; lost at the Supreme Court on the question of whether employer mandated anti-theft-security searches constituted "work" within the FLSA and as a postliminary activity under the Portal-to-Portal Act (*Integrity Staffing Solutions, Inc. v. Busk,* 135 S.Ct. 513 (2014)); and won again at the Sixth Circuit Court of appeals on the question of whether the Portal-to-Portal Act applies to Nevada wage and hour law (*In re: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) And Wage and Hour Litigation,* 2017 WL 2662607 (2017)).  The Sixth Circuit decision has been appealed yet again to the Supreme Court of the United States (Case No. 18A766 distributed to conference and responses requested and provided).  Thierman Buck, LLP's lodestar for the complete loss at the Supreme Court alone was $1,633,280.50.  Counsel will continue to expend attorney time and expenses while continuing to litigate this case.

In *Walden v. The State of Nevada, ex rel. Nevada Department of Corrections,* Case No. 3:14-cv-00320-MMD-WGC removed to the United States District Court District of Nevada on June 17, 2014, Counsel recently argued at the Ninth Circuit Court of Appeals on the questions of whether the State of Nevada waived sovereign immunity from the FLSA by statute and/or by removal to federal court from state court.  Oral argument was held March 13, 2019.  To date, Thierman Buck, LLP has a lodestar of $1,580,254.00 in cost over five-plus years of intense litigation and will continue to expend attorney time and expenses while continuing to litigate this case, potentially responding to a writ request to the Supreme Court of the United States.

**PLAINTIFF'S' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

c.    *The contingent nature of the representation and the efforts and costs expended by Class Counsel justify the fee requested.*

As recently observed by this Court in *In re Nat'l Collegiate Athletic Ass'n,* 2017 WL 6040065 at *4:

> Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (emphasis added). "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino II*, 290 F.3d at 1051 (emphasis added). And "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

For the past ten-plus years, Class Counsel have prosecuted this case on a contingency fee basis while advancing all labor and costs for the benefit of the 4,500+ Class Members. *See* Buck Dec., generally. Class Counsel have invested their own labor and nearly $44,000.00 in litigation costs (including expert witness fees and three mediations) with no guarantee whatsoever of any recovery. *Id.* ¶ 23. The contingent nature of the representation, as well as the considerable amount of time and costs expended justify the fee requested. *See*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) ("Class counsel, however, have the case on a contingency. Moreover, it is a double contingency; first, they must prevail on the class claims, and then they must find some way to collect what they win.").

Accordingly, this factor supports Counsel's request for 33.3% of the common fund

d.    *Awards in similar cases justify the requested fee.*

This case posed questions of first impression in this Court, at the Ninth Circuit, and tangentially the Supreme Court of Nevada. Indeed, after this Court granted Walmart's motion for summary judgment and denied Plaintiff's first renewed motion to certify class as moot, (ECF No. 60) Plaintiffs' appealed to the Court of Appeals for the Ninth Circuit. The Ninth Circuit

ultimately reversed the Court's grant of summary judgment and remanded holding: (1) that Plaintiffs were entitled to seek waiting time penalties under NRS §§ 608.040 and 608.050, (2) that overtime pay is a form of wages under both NRS § 608.040 and Nevada law, and (3) that Plaintiffs were employed pursuant to an oral contract. (ECF No. 69.)  This case was also stayed while the Nevada Supreme Court definitively determined employee-plaintiffs, such as the Class Members here do indeed have a private right of action exists to pursue claims under NRS Chapter 608.  *Neville v. Eighth Judicial District Court in & for County of Clark*, 406 P.3d 499 (2017).

Accordingly, because this case posed questions of first impression that will be used to justify determinations and awards in similar cases, this factor supports Counsel's request for 33.3% of the common fund.

> e.   *Whether the Class was notified of the requested fees and had an opportunity to inform the Court of any concerns they have with the request.*

The Notice to Class Members prominently disclosed both the attorneys' fee award amount of $2,900,000.00 and costs of up to $65,000.00.  *See* Cita Dec., Exhibit A, Notice Packet at pp. 3-4.   No Class Member objected to the fees or the costs disclosed in the Notice.  Further the Notice informed Class Members that the Court will hold a final fairness hearing to provide final review of the Settlement and an additional opportunity for the Parties and Class Members to address any issues raised by the Class Members and/or the Court.  *Id.*

Accordingly, this factor supports Counsel's request for 33.3% of the common fund.

### 3.   Class Counsel Should Recover The Litigation Costs And Expenses Actually Incurred For The Benefit Of The Class

Class Counsel also seek reimbursement from the settlement fund in the amount of no more than $65,000.00 for litigation costs advanced during the course of this case.  This amount was preliminarily approved by the Court (ECF No. 129) and prominently displayed in the Notice to Class Members.  *See* Cita Dec., Exhibit A, "Notice Packet."  These out-of-pocket expenses were incurred for the Class Members' benefit during this litigation and include filing fees, process service fees, mediator's fees, expert witness fees, travel expenses, photocopies, document imaging, postage, and research.  Reimbursement is appropriate for the same reasons

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

attorney's fees should be paid out of the fund: all beneficiaries should bear their fair share of the costs of litigation, and these are the normal costs of litigation that clients traditionally pay. Reimbursement of reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients" is appropriate. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994). As set forth in the Class Counsel's accompanying declarations, all of the costs sought were necessary in connection with the prosecution of this litigation and were made for the benefit of the Class. *See* Buck Dec., ¶¶ 27-28; Markham Dec., ¶ 13.

## IV.   CONCLUSION

Counsel for the Parties aggressively litigated and now settled this case. In the judgment of Plaintiffs and Class Counsel, and unopposed by Defendant, the proposed Settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each Party's case. Thus, Plaintiffs respectfully request that Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Costs, and Class Representative Enhancement Payments should be granted.

Date:  June 5, 2020                          THIERMAN BUCK LLP

                                             */s/Joshua D. Buck*
                                             Mark R. Thierman (Nev. Bar No. 8285)
                                             Joshua D. Buck (Nev. Bar No. 12187)

                                             *Counsel for Plaintiffs*

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## CERTIFICATE OF SERVICE

Pursuant for FRCP 5(b) and LR IC 4-1(d), I hereby certify that I am an employee of Thierman Buck Law Firm, and that on this the 5th day of June, 2020, I served a true and correct copy of the forgoing **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

MARK E. FERRARIO (Bar No. 1625)
ERIC W. SWANIS (Bar No. 6840)
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: FerrarioM@gtlaw.com
SwanisE@gtlaw.com

BRIAN L. DUFFY, ESQ. (*Admitted Pro Hac Vice*)
NAOMI G. BEER, ESQ. (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Telephone: (303) 572-6500
Facsimile: (303) 572-6540
Email: DuffyB@gtlaw.com
BeerN@gtlaw.com

*Attorneys for the Defendant*

I declare I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 5, 2020, at Zephyr Cove, Nevada.

/s/    *Araceli Garcia*
Araceli Garcia